**No. 25-5975**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LOS ANGELES PRESS CLUB; NEWSGUILD - COMMUNICATIONS WORKERS OF AMERICA; SEAN BECKNER-CARMITCHEL; RYANNE MENA; LEXIS-OLIVIER RAY; CHARLES XU; BENJAMIN ADAM CLIMER; ABIGAIL OLMEDA,

*Plaintiffs-Appellees,*

v.

KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Central District of California
Case No. 2:25-cv-05563-HDV-E
Honorable Hernán D. Vera Presiding

## BRIEF OF *AMICUS CURIAE* FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

Ronald G. London
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@thefire.org

Counsel for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amicus curiae* certifies that (1) *amicus* does not have any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in *amicus*. *Amicus* Foundation for Individual Rights and Expression is a nonprofit corporation exempt from income tax under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ...................................................... iii

INTERESTS OF *AMICUS CURIAE* ........................................... 1

SUMMARY OF ARGUMENT .................................................. 2

ARGUMENT ............................................................... 4

I.    Plaintiffs Face a Real and Immediate Threat of Repeated Injury. ........................................................... 6

    A.    History of prior First Amendment harms evinces real and immediate threat of future injury. ................................ 6

    B.    The record is rife with the kind of sustained, ongoing injury that evidences future injury. ...................................... 8

    C.    The government's fact-based challenges to the record evidence cannot overcome the district court's finding of standing................................................................. 10

II.    Plaintiffs Have Suffered Chilling of Their First Amendment Rights. .......................................................... 15

CONCLUSION ........................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*American Encore v. Fontes,*
  152 F.4th 1097 (9th Cir. 2025) .......................................................5, 15

*Anderson v. Bessemer City,*
  470 U.S. 564 (1985) ...........................................................................11

*Babbitt v. Farm Workers,*
  442 U.S. 289 (1979) ...........................................................................15

*Brnovich v. Democratic Nat'l Comm.,*
  594 U.S. 647 (2021) ...........................................................................11

*Cal. Pro–Life Council, Inc. v. Getman,*
  328 F.3d 1088 (9th Cir. 2003)..............................................................4

*Flaxman v. Ferguson,*
  151 F.4th 1178 (9th Cir. 2025) ........................................................6, 7

*Index Newspapers LLC v. United States Marshals Service,*
  977 F.3d 817 (9th Cir. 2020)..........................................7, 8, 15, 16, 17

*Institute for Free Speech v. Jarrett,*
  No. 22-35112, 2022 WL 11588758 (9th Cir. Oct. 10, 2022) ..............4, 5

*Italian Colors Restaurant v. Becerra,*
  878 F.3d 1165 (9th Cir. 2018)..............................................................5

*Libertarian Party of L.A. Cnty. v. Bowen,*
  709 F.3d 867 (9th Cir. 2013)..............................................................15

*Lopez v. Candaele,*
  630 F.3d 775 (9th Cir. 2010)................................................................5

*LSO, Ltd. v. Stroh,*
  205 F.3d 1146 (9th Cir. 2000)..............................................................5

*Munns v. Kerry,*
  782 F.3d 402 (9th Cir. 2015)..............................................................16

*Murthy v. Missouri,*
603 U.S. 43 (2024) ................................................................6

*Nordstrom v. Ryan,*
762 F.3d 903 (9th Cir. 2014) ..............................................14

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ............................................................6, 7

*Oklevueha Native Am. Church of Haw., Inc. v. Holder,*
676 F.3d 829 (9th Cir. 2012) ................................................7

*Steffel v. Thompson,*
415 U.S. 452 (1974) ............................................................6, 7

*Stockton v. Brown,*
152 F.4th 1124 (9th Cir. 2025) ...........................................4, 5

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ........................................................6, 7, 15

*Thomas v. Cnty. of Los Angeles,*
978 F.2d 504 (9th Cir. 1992) ................................................8

*Twitter, Inc. v. Paxton,*
56 F.4th 1170 (9th Cir. 2022) ..............................................4

*Villa v. Maricopa Cnty.,*
865 F.3d 1224 (9th Cir. 2017) ............................................15

## INTERESTS OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit that defends the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended First Amendment rights nation-wide through public advocacy and targeted litigation. FIRE represents speakers, without regard to their political views, in lawsuits across the United States. *See, e.g., Villarreal v. Alaniz*, 145 S. Ct. 368 (2024), *on remand*, 134 F.4th 273 (5th Cir. 2025), No. 25-29 (S. Ct. July 9, 2025) (petition for a writ of certiorari); *Spectrum WT v. Wendler*, 151 F.4th 714, *reh'g en banc granted*, *opinion vacated*, No. 23-10994, 2025 WL 300819 (5th Cir. Oct. 27, 2025); *Volokh v. James*, 148 F.4th 71 (2d Cir. 2025), *cert. accepted*, 44 N.Y.3d 963 (2025); *Fellowship of Christian Univ. Students at Univ. of Tex. at Dallas v. Eltife*, No. 1:25-CV-1411-DAE, 2025 WL 2924228 (W.D. Tex. Oct. 14, 2025), *appeal filed*, No. 25-50914 (5th Cir. Nov. 5, 2025) (FOCUS). FIRE also regularly participates as *amicus* in

---

[1] No counsel for a party authored this brief in whole or in part. Further, no person, other than *amicus*, their members, or their counsel contributed money intended to fund this brief's preparation or submission. All parties have consented to the filing of this brief.

1

cases implicating First Amendment rights. *Little v. Llano Cnty.*, 138 F.4th 834 (5th Cir. 2025), *petition for certiorari docketed*, No. 25-284 (U.S. Sept. 11, 2025) (*amicus*); *Lackey v. Stinnie*, 145 S. Ct. 659 (2025) (*amicus*); *Murthy v. Missouri*, 603 U.S. 43 (2024) (*amicus*).

FIRE thus regularly confronts challenges to standing in cases seeking to vindicate First Amendment rights. See, e.g., *FOCUS*, 2025 WL 2924228, at \*8–12; *Diei v. Boyd*, 116 F.4th 637, 642–43 (6th Cir. 2024); *Abbott v. Pastides*, 900 F.3d 160, 175–80 (4th Cir. 2018) (FIRE-sponsored Stand Up for Speech challenge to campus speech policy). It accordingly has a strong interest in reinforcing proper application of standing principles in constitutional challenges.

## SUMMARY OF ARGUMENT

FIRE agrees with Plaintiffs-Appellees that the district court's order granting a preliminary injunction was correct in all respects and therefore warrants affirmance. FIRE further agrees with *amicus curiae* National Press Photographers Association that the preliminary injunction is (1) consistent with existing law, policy, and other routinely upheld injunctions; (2) workable and enforceable; and (3) in the public interest.

FIRE nevertheless writes separately to emphasize the importance of adhering to Article III standing principles specific to protecting litigants' First Amendment rights. Failure to do so, especially were it to impose more onerous requirements than Article III requires, would impede the ability of injured plaintiffs to remedy violations of the First Amendment, the perennial free speech promises of which would mean little if standing is manipulated to bar relief. For the First Amendment to have any real bite, injured plaintiffs must be able to have their day in court.

The district court's grant of a preliminary injunction correctly held Plaintiffs have standing to seek prospective relief. That is so for two independently sufficient but mutually reinforcing reasons. First, the history of the government's ongoing and sustained retaliation against Plaintiffs' constitutionally protected expressive activity creates real and immediate threat of future injury. Second, that repeated retaliation against Plaintiffs' protected speech has chilled the exercise of their First Amendment rights.

There is nothing speculative about Plaintiffs' fear that the government will retaliate yet again should Plaintiffs continue

3

documenting the government's response to future protests. Rather, Plaintiffs have adequately demonstrated a real and immediate threat of repeated injury, particularly given the relaxed standard this Court applies to standing in the context of threatened enforcement implicating First Amendment rights. As the district court accordingly did not err in holding Plaintiffs have standing to obtain a preliminary injunction, this Court should affirm entry of that order.

## ARGUMENT

The district court correctly held Plaintiffs satisfy the relaxed standard that dramatically favors finding standing to seek prospective injunctive relief from threatened enforcement that implicates First Amendment rights. It is well-settled that this court "appl[ies] the requirements of … standing less stringently in the context of First Amendment claims." *Stockton v. Brown*, 152 F.4th 1124, 1143 (9th Cir. 2025), *petition for certiorari docketed*, No. 25-606 (U.S. Nov. 24, 2025) (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173–74 (9th Cir. 2022)); *see Cal. Pro–Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003) ("[I]n the First Amendment-protected speech context, the Supreme Court has dispensed with rigid standing requirements."); *Inst. for Free*

*Speech v. Jarrett*, No. 22-35112, 2022 WL 11588758, at \*1 (9th Cir. Oct. 10, 2022) ("[W]e apply a more relaxed standing standard in the First Amendment context … ."). The "relaxed standing principles in the context of the First Amendment," *Stockton*, 152 F.4th at 1144, create a "lowered threshold for establishing standing." *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010).

This Court has "long recognized that First Amendment cases raise unique standing considerations ... that tilt[ ] dramatically toward a finding of standing." *American Encore v. Fontes*, 152 F.4th 1097, 1113 (9th Cir. 2025) (cleaned up); *see Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018) ("'[W]hen the threatened enforcement effort implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing.'") (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000)). Here, the record amply demonstrates real and immediate threat of repeated injury based on the history of recent government mistreatment of the press in Los Angeles, and that it has chilled—and continues to chill—Plaintiffs' speech. FIRE has a keen interest in ensuring the vindication of Plaintiffs' First Amendment rights—and the rights of future targets of government

5

censorship—by urging this court to affirm the district court's holding that Plaintiffs have standing to seek the preliminary injunction.

## I. Plaintiffs Face a Real and Immediate Threat of Repeated Injury.

### A. History of prior First Amendment harms evinces real and immediate threat of future injury.

Plaintiffs have standing to seek prospective injunctive relief because they "face 'a real and immediate threat of repeated injury.'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." (internal quotation marks omitted)); *Flaxman v. Ferguson*, 151 F.4th 1178, 1187 (9th Cir. 2025) ("There is clearly a live controversy" when Defendants' conduct has "created First Amendment harm and pose[s] a threat of imminent future First Amendment harm.").

The best evidence of whether there is a real and immediate threat of repeated injury is, unsurprisingly, a history of prior injuries, because "[t]here is nothing abstract, hypothetical, or premature about events that have already happened." *Id.* at 1186; *see Susan B. Anthony List*, 573 U.S. at 164 ("[P]ast enforcement against the same conduct is good evidence

6

that the threat of enforcement is not 'chimerical.'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)); *O'Shea*, 414 U.S. at 496 ("Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012) (prior injury "eliminat[es] any concerns that Plaintiffs' fear of enforcement is purely speculative"). Courts do "not need to derive a threat of enforcement," *Flaxman*, 151 F.4th at 1186, when the government has already repeatedly injured Plaintiffs.

For example, in *Susan B. Anthony List*, the Supreme Court unanimously held plaintiffs had standing to seek prospective injunctive relief because the "history of past enforcement" created a substantial "threat of future enforcement." 573 U.S. at 164. Here, the record is brimming with evidence of past enforcement against Plaintiffs' constitutionally protected expressive activity—in fact, not only does it reflect the government repeatedly injuring Plaintiffs and similarly situated nonparties, it shows the kind of repeated injury to the same individuals on different occasions that conclusively establishes real and immediate threat of further injury. *See Index Newspapers LLC v. United*

7

*States Marshals Service*, 977 F.3d 817, 826 (9th Cir. 2020) (quoting *Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992)) ("[T]he 'possibility of recurring injury ceases to be speculative when actual repeated incidents are documented.'").

### B. The record is rife with the kind of sustained, ongoing injury that evidences future injury.

The record contains evidence of the government repeatedly injuring both Plaintiffs and nonparties engaged in protected expressive activity. Taking just a few examples, start with Plaintiff Ryanne Mena—a professional journalist with experience covering protests—who stated in her declaration that she was shot in the leg with a pepper ball (leaving a gnarly bruise, a picture of which she included in her declaration) while covering a protest against Immigration and Customs Enforcement (ICE) raids. ER-188–191. The next day, Plaintiff Mena was covering another protest against an ICE raid when she was shot in the head with a rubber bullet—causing a concussion—before being overwhelmed by tear gas. ER-194–95.

Likewise, Plaintiff Sean Beckner-Carmitchel was shot with a tear gas canister while covering a protest against an ICE raid, causing "an enormous hematoma" on his head "about the size of a golf ball." ER-184.

8

The next day, while covering a different anti-ICE protest, Plaintiff Beckner-Carmitchel was shot with a pepper ball—ironically striking his press pass. 4-SER-663–64.

And Plaintiff Lexis-Olivier Ray was targeted with pepper balls while covering a protest, causing him to flee and seek cover. 4-SER-628. After the firing stopped, Plaintiff Ray joined other members of the press congregating near press vans. 4-SER-628. Officers later fired a barrage of pepper balls at Plaintiff Ray and other journalists, striking Plaintiff Ray multiple times in his hand and back. 4-SER-630.

As to nonparties, while photographing a protest, photojournalist Ted Soqui was shot in the face with a pepper ball and, immediately thereafter, took a rubber bullet to the shin. 4-SER-654. He returned the next day to continue photographing the protest, and he was shot in the back three times with rubber bullets. 4-SER-655. Similarly, while documenting a protest, journalist and L.A. Press Club member R.R. was shot in the leg with a pepper ball and, later that day, shot in the back with a projectile. ER-148–49. And while monitoring a protest, legal observer Elizabeth Howell-Egan was exposed to tear gas and, later that day, shot in the foot with a pepper ball. 3-SER-599–600.

9

**C.    The government's fact-based challenges to the record evidence cannot overcome the district court's finding of standing.**

The government's arguments attempting to wave away the repeated retaliation against exercises of First Amendment rights cannot undermine Plaintiffs' standing. It first contends the district court's finding of intentional targeting of Plaintiffs in retaliation for First Amendment activities is clearly erroneous because it assertedly "ignored the most obvious alternative explanation for plaintiffs' alleged injuries: that those injuries *incidentally* resulted from officers' legitimate efforts to protect federal personnel, federal property, and the public from the chaos of violent protests." AOB at 23 (emphasis added). According to the government, its crowd-control devices are designed to disperse widely and are "therefore likely to impact not only violent protesters but also people standing nearby who have disobeyed orders to disperse— including journalists who position themselves in such locations." AOB at 23 (citation omitted). The government also claims Plaintiffs' injuries could have been caused by violent opportunists kicking or throwing its chemical munitions after deployment. AOB at 24.

In short, the government contends the district court should have adopted the "alternative explanation" that Plaintiffs were inadvertently caught in the crossfire of otherwise legitimate exercises of force. AOB at 23. But even if the government's imaginative "alternative explanation" could be reconciled with the evidence in the record, this court cannot reverse a district court's plausible view of the evidence. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 687 (2021) ("If the district court's view of the evidence is plausible in light of the entire record, an appellate court may not reverse even if it is convinced that it would have weighed the evidence differently in the first instance."); *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Moreover, the government's "alternative explanation" cannot be reconciled with the evidence in the record.

For example, Plaintiff Mena's declaration stated she was "clearly identifiable as a journalist," wearing two press credentials and taking notes in her notepad, and "clearly removed from the protestors," when she was shot with a pepper ball which, unlike diffusive tear gas, is a targeted projectile. ER-189–92. Plaintiff Mena's declaration further

11

stated she and Plaintiff Beckner-Carmitchel were "about 30–50 feet away from protestors" when she was shot in the head with a rubber bullet— another targeted projectile—and he was shot in the head with a tear gas canister. ER-193–94. Perhaps the government could credibly suggest tear gas wafted to unintended targets in the crowd, but rubber bullets and tear gas canisters do not inadvertently strike Plaintiffs' heads 50 feet away. It is simply implausible that Plaintiffs Mena and Beckner-Carmitchel were inadvertently shot.

Likewise, Plaintiff Ray's declaration stated that when officers came around the side of the press van behind which he and other journalists were hiding from the officers' "machine gun fire" of pepper balls, he shouted they were members of the press, but the officers shot them anyway—including one officer who directly shot Plaintiff Ray "from about 10 feet away." 4-SER-629–30. Inadvertent? Doubtful.

To give just one more example demonstrating the implausibility of the government's alternative explanation of the evidence, Declarant Soqui stated that after getting shot with a pepper ball and rubber bullet the previous day, he was intentionally physically distant from both protesters and law enforcement—approximately 50 to 100 feet away—

12

when he was shot in the back three times with rubber bullets. 4-SER-654–55. This evidence cannot be understood to support any finding other than deliberate retaliation.

The government next argues that even if the district court did not clearly err in finding the government intentionally retaliated against Plaintiffs, it "would amount at most to a handful of isolated episodes, nothing close to an official but unwritten policy." AOB at 18–19. According to the government, the district court "focused on allegations of injury sustained at only a few specific protests." AOB at 19. And the government emphasizes that "the record does not indicate that retaliatory force was used at *all* such protests," and that there were "two other incidents during the same period" where "officers deployed *no* crowd-control devices despite being confronted by protesters." AOB at 19 (emphases in original). Finally, the government argues "the record does not establish that the individual plaintiffs would again be subjected to retaliatory force even if such a policy existed" because "the district court identified only a comparatively small number of allegedly retaliatory incidents involving plaintiffs." AOB at 19.

13

But contrary to the government's claim, the district court's preliminary injunction order devoted no less than fifteen pages to comprehensively recounting the government's pervasive retaliatory enforcement at numerous protests spanning more than a month based on declarations from nearly 50 journalists, legal observers, and protestors. ER-6–20. Moreover, Plaintiffs are not *required* to demonstrate the government had an official but unwritten policy pursuant to which it engaged in unconstitutional retaliation at every single protest—though it is true a real and immediate threat of repeated injury *may* be established by demonstrating the harm is part of a pattern of officially sanctioned behavior violative of plaintiffs' federal rights. See *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014).

Likewise, the mere fact that government actors refrained from shooting journalists at two protests does not diminish an extensive history of repeatedly injuring Plaintiffs and similarly situated nonparties, which is more than sufficient to establish a real and immediate threat of future injury. Finally, it was proper for the district court to rely on nonparty declarations in evaluating the threat of future injury to Plaintiffs because, as the district court observed, "the experience

14

of other journalists, legal observers, and protestors bears directly on the operative question of whether Plaintiffs 'will again be wronged in a similar way.'" ER-26 (quoting *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017)).

****

In sum, "[o]n these facts, the prospect of future enforcement is far from 'imaginary or speculative.'" *Susan B. Anthony List*, 573 U.S. at 165 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Article III standing does not require Plaintiffs to take yet another rubber bullet to the head before seeking injunctive relief. Plaintiffs have more than adequately demonstrated they face a real and immediate threat of repeated injury, and therefore have standing to seek prospective injunctive relief.

## II. Plaintiffs Have Suffered Chilling of Their First Amendment Rights.

The district court also properly proceeded to enter a preliminary injunction because "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *American Encore v. Fontes*, 152 F.4th 1097, 1113 (9th Cir. 2025) (quoting *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013)); see also *Index*

15

*Newspapers LLC*, 977 F.3d at 826 ("A chilling of First Amendment rights can constitute a cognizable injury, so long as the chilling effect is not 'based on a fear of future injury that itself [is] too speculative to confer standing.'") (quoting *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015)).

The government hardly bothers resisting the district court's determination that the retaliation against Plaintiffs created a chilling effect sufficient to independently establish standing to seek prospective injunctive relief. It simply asserts a bare conclusion that Plaintiffs manufactured standing by inflicting harm on themselves based on their fears of hypothetical future harm. AOB at 20. But as explained above, *supra* pp. 6-15, Plaintiffs clearly face a real and immediate threat of repeated injury.

Moreover, the record contains direct evidence of the chilling effect Plaintiffs have suffered. For example, Plaintiff Ray stated in his declaration that while he plans to continue reporting on protests, he was "quite spooked that federal officers appear to be using force for no apparent reason and targeting people who are obviously journalists." 4-SER-631–32. He thus affirmed that if he is at a protest policed by federal officers, he is "likely to stay further back to avoid being subject to force

16

or arrested" despite the fact he "won't get the same coverage." 4-SER-632. And Plaintiff Mena stated in her supplemental declaration that, "in light of [her] experience getting shot by DHS agents twice," she will wear personal protective equipment provided by her employer—including a tactical protective vest, Kevlar leggings, a respirator, and goggles—when covering future protests. 3-SER-490. Plaintiff Mena further stated that while she anticipated wearing all this gear "may pose a barrier to effective reporting," it was "clearly necessary." 3-SER-490.

Such chilling of the exercise of Plaintiffs' First Amendment rights based on real and immediate threat of repeated retaliation is therefore a cognizable injury sufficient to establish Plaintiffs' standing to seek prospective injunctive relief. See *Index Newspapers LLC*, 977 F.3d at 826–27 (holding the government's repeated retaliation against journalists chilled the exercise of their First Amendment rights sufficient to constitute a cognizable injury for standing purposes).

## CONCLUSION

For the foregoing reasons, as the district court did not err in holding Plaintiffs have standing to seek prospective injunctive relief, this Court

17

should affirm the preliminary injunction, as modified in the district court's order denying the government's stay motion.

Dated: November 25, 2025
/s/ *Ronald G. London*

Ronald G. London
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@thefire.org

Counsel for *Amicus Curiae*

18

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 25-5975

I am the attorney or self-represented party.

**This brief contains** | 3,290 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Ronald G. London | **Date** | 11/25/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**     *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 25, 2025, an electronic copy of the foregoing was filed with the Clerk of this Court using the CM/ECF system, and that all parties will be served through that system.

/s/ *Ronald G. London*

Ronald G. London
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION