

**U.S. Department of Justice**
950 Pennsylvania Avenue NW
Washington, DC 20530

Tel: (202) 353-6880

March 11, 2026

VIA CM/ECF

Hon. Molly C. Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
The James R. Browning Courthouse
95 7th Street
San Francisco, CA 94103

RE:        *Los Angeles Press Club v. Noem*, No. 25-5975

Dear Ms. Dwyer:

Pursuant to Federal Rule of Appellate Procedure 28(j), we write to notify the Court of further developments in *Chicago Headline Club v. Noem*, No. 25-3023 (7th Cir.).  That appeal arose from a preliminary injunction whose terms resemble those of the injunction at issue here.  As explained in our letter dated December 1, 2025, the Seventh Circuit stayed the injunction pending appeal.

After the stay was issued and the government filed its opening brief, plaintiffs "unexpected[ly] . . . moved to dismiss the case with prejudice before the district court."  Add.7. [1]  But the district court "dismissed the case *without* prejudice—even though plaintiffs had asked for dismissal *with* prejudice."  Add.8 (emphases in original).  The government moved to voluntarily dismiss its appeal while "flagg[ing] . . . concerns" about the procedurally irregular dismissal order.  Add.8; *see* Add.14-16 (describing irregularities).

On March 5, 2026, the Seventh Circuit vacated the preliminary injunction and dismissed the appeal.  Add.1.  In the accompanying per curiam opinion, the panel majority held that vacatur was warranted because subsequent factual developments "strongly suggest[ed]" that the "case [was] moot."  Add.11.  The majority further held that, "even if the case [were] not moot," "[v]acatur is still the

---

[1] Citations in this format refer to the attached addendum.

right remedy" because the injunction was "overbroad" and "constitutionally suspect." Add.11. The majority specifically emphasized that the injunction "impermissibly infringes on separation of powers principles" by "establish[ing] the district court as the supervisor of all Executive Branch activity in the city of Chicago—a role another federal court of appeals has found problematic." Add.12 (citing *Tincher v. Noem*, 164 F.4th 1097, 1100 (8th Cir. 2026)). The majority also expressed skepticism of the district court's conclusion "that all the lead plaintiffs had Article III standing at a high level of generality"—a conclusion that "appears to be in substantial tension" with *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Add.13-14. Judge Easterbrook dissented on the theory that the procedural posture of the case precluded vacatur, but noted that he "share[d]" the majority's "concerns" with "some of the events in this litigation." Add.18.

Sincerely,

MARK R. FREEMAN
AUGUST FLENTJE

*/s/ Michael Shih*
MICHAEL SHIH
Counsel for Appellants

cc:    All counsel by ECF

Attachment

2

**ADDENDUM**

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

March 5, 2026

Before

**MICHAEL B. BRENNAN,** *Chief Judge*
**FRANK H. EASTERBROOK,** *Circuit Judge*
**MICHAEL Y. SCUDDER,** *Circuit Judge*

| No. 25-3023 | CHICAGO HEADLINE CLUB, et al., Plaintiffs - Appellees v. KRISTI L. NOEM, Secretary of Homeland Security, in her official capacity, et al., Defendants - Appellants |
|---|---|

| **Originating Case Information:** |
|---|
| District Court No: 1:25-cv-12173 |
| Northern District of Illinois, Eastern Division |
| District Judge Sara L. Ellis |

We grant the government's motion. We **VACATE** the district court's order granting the preliminary injunction. And we **DISMISS** this appeal under Federal Rule of Appellate Procedure 42(b)(2). The above is in accordance with the decision of this court entered on this date. Each party bears its own costs.

Clerk of Court

form name: **c7_FinalJudgment**    (form ID: 132)

**Add.1**

In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 25-3023

CHICAGO HEADLINE CLUB, *et al.*,

*Plaintiffs-Appellees,*

*v.*

KRISTI NOEM, Secretary of Homeland Security, in her official capacity, *et al.*,

*Defendants-Appellants.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:25-cv-12173 — **Sara L. Ellis**, *Judge.*

---

DECIDED MARCH 5, 2026

---

Before BRENNAN, *Chief Judge*, and EASTERBROOK and SCUDDER, *Circuit Judges*.

PER CURIAM. During the fall of 2025, federal immigration authorities ramped up their enforcement activities in Chicago, an effort known as "Operation Midway Blitz." Many Chicagoans protested these efforts. Some demonstrations were peaceful, while others turned into clashes between protesters and federal officers.

**Add.2**

In early October 2025, a group of protesters and journalists sued a host of federal defendants. They believed officers from Immigration and Customs Enforcement (ICE), Customs and Border Protection (CBP), and the Department of Homeland Security (DHS) violated their First and Fourth Amendment rights by using tear gas and other chemical agents to break up protests without justification. The district court agreed with the plaintiffs and entered a sweeping preliminary injunction regulating all federal immigration enforcement efforts districtwide. The government promptly appealed that order.

The plaintiffs then abruptly changed course. They asked the district court to voluntarily dismiss the case because "it appears that Operation Midway Blitz has ended." They also told this court that the government would move to dismiss the appeal and vacate the preliminary injunction under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), once the district court wrapped up its proceedings.

The promised motion is now before us. For the reasons below, we vacate the district court's preliminary injunction order and then dismiss this appeal.

**I**

**A**

This case centers on several conflicts between officers and protesters outside ICE's detention center in Broadview, Illinois. Protesters have long gathered to demonstrate outside the Broadview facility. After the federal officials announced an increase in enforcement activity, these protests grew in size and intensity. The plaintiffs allege that throughout September and October 2025, federal agents repeatedly targeted and attacked protesters outside the Broadview center. The plaintiffs'

**Add.3**

No. 25-3023                                                    3

original complaint chronicles instances of agents shoving pro-
testors, shooting pepper balls at them from the facility's roof,
and throwing canisters of tear gas into crowds without justi-
fication.

Three days after plaintiffs filed this lawsuit, the district
court entered a sweeping temporary restraining order not
limited to the Broadview facility. It enjoined all law enforce-
ment officers in the Northern District of Illinois, as well as fed-
eral agencies and the Secretary of the DHS, from using certain
crowd control tactics and tools. It also required the defend-
ants to regularly inform the court of its efforts at implement-
ing the injunction.

To enforce these reporting requirements, the district court
mandated that one defendant, DHS Chief Gregory Bovino,
appear in court daily and answer the court's questions about
compliance with the TRO. This court granted the govern-
ment's request for a writ of mandamus. *Noem v. Ellis*, No. 25-
2936, D.E. 11. The mandamus order summarized the "two
principal failings" of the district court's demands:

> First, it puts the court in the position of an in-
> quisitor rather than that of a neutral adjudicator
> of the parties' adversarial presentations. Sec-
> ond, it sets the court up as a supervisor of Chief
> Bovino's activities, intruding into personnel
> management decisions of the Executive Branch.
> These two problems are related and lead us to
> conclude that the order infringes on the separa-
> tion of powers.

*Id.* at 2.

**Add.4**

4                                                    No. 25-3023

Meanwhile, the plaintiffs asked the district court to certify a class of "all persons who are or will be peacefully present at demonstrations in the Northern District of Illinois, and who intend to non-violently participate in, observe, or record the demonstrations, or engage in news gathering, reporting, or prayer." Their amended complaint also added non-Broadview plaintiffs to justify the requested relief. Over the next several weeks, the plaintiffs filed eight notices of violations of the TRO. None of these notices involved the Broadview facility. They instead describe incidents in neighborhoods all around Chicago.

On November 6, the district court granted the plaintiffs' motion for a preliminary injunction. Certifying the proposed class, the injunction enjoined all federal law enforcement officials in Chicago, as well as multiple federal agencies.

Two weeks after granting class certification and preliminary relief, the district court issued a full opinion. It contained over 170 pages of fact-finding, including many incidents that did not involve named plaintiffs and occurred far beyond the Broadview facility. The court also found that all the plaintiffs had Article III standing to sue for injunctive relief and concluded they were likely to succeed on the merits. Finally, the court explained why it thought such a sweeping injunction was necessary to provide complete relief.

**B**

The government filed an interlocutory appeal. It also moved for an emergency stay pending appeal, arguing the district court exceeded its authority by entering such a broad injunction. The plaintiffs opposed this stay request, asserting

**Add.5**

No. 25-3023                                              5

that the injunction remained necessary to prevent the "unre-lenting pattern of violence against Plaintiffs."

We granted the government's motion to stay the injunction pending appeal. Our stay order emphasized that the injunction was overbroad. "In no uncertain terms," we said, "the district court's order enjoins an expansive range of defendants, including … the entire Departments of Homeland Security and Justice, and anyone acting in concert with them." The "practical effect" of the injunction "is to enjoin all law enforcement officers within the Executive Branch."

As in the mandamus order, we also noted that the district court set itself up as supervisor over the Executive Branch. "[T]he order requires the enjoined parties to submit for judicial review all current and future internal guidance, policies, and directives regarding efforts to implement the order—a mandate impermissibly infringing on principles of separation of powers on this record." And the order was "too prescriptive" because "it enumerates and proscribes the use of scores of riot control weapons and other devices in a way that resembles a federal regulation."

Finally, we flagged concerns about whether the district court had properly analyzed Article III standing in this case. It was not obvious that the plaintiffs had satisfied the requirements of *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983). And "public reporting suggest[ed] that the enhanced immigration enforcement initiative may have lessened or ceased, which could affect both the justiciability of this case and the propriety of injunctive relief." Then we announced our intention to expedite oral argument to respond to the urgency of the situation.

**Add.6**

## C

Soon after issuing the stay, we set a date for oral argument and received an opening brief from the government. But the proceedings took an unexpected turn. In early December, the plaintiffs informed us they had moved to dismiss the case with prejudice before the district court.

The plaintiffs asked this court to stay the appeal while the district court wrapped up the case. Noting this case had "involved extensive, time-consuming litigation in a compressed time period," plaintiffs told us "the situation that precipitated this litigation has changed in a material way" because "the roughly 200-225 DHS agents" involved in Operation Midway Blitz "are no longer operating in the Northern District of Illinois, and Plaintiffs' counsel have not received a report of unconstitutional behavior … since November 8, 2025."

According to the plaintiffs, the government consented to their stay motion. In turn, plaintiffs agreed to consent to a future motion by the government to stay the appeal and vacate the district court's preliminary injunction.

Back before the district court, the plaintiffs sought a court order to dismiss this case. Normally, early in litigation plaintiffs can dismiss a case without a court order. FED. R. CIV. P. 41(a)(1)(A). But that rule does not apply when the district court certifies a class. *See id.* at Rule 23(e). Instead, the court may dismiss the case only after holding a hearing, giving notice to the class, and offering an opportunity for members of the class to object or opt out. *Id.* at 23(e)(1)–(2), (5).

At first, the district court followed the Rule 23 procedures. It conducted the necessary hearing and provided four weeks for any objectors to make their concerns known. No members

**Add.7**

No. 25-3023                                                    7

of the certified class objected to the plaintiffs' proposal to dismiss the case with prejudice.[1] And the government did not oppose the motion to dismiss.

At the final hearing, the district court dismissed the case. In doing so, the court deviated from Rule 23 and the plaintiffs' motion. It *sua sponte* de-certified the class. Then the court dismissed the case *without* prejudice—even though plaintiffs had asked for dismissal *with* prejudice.

The government returned to this court seeking to dismiss this appeal and flagged these concerns. In many ways, the government submitted, the district court did not "grant" the plaintiffs' motion to dismiss at all because it disregarded the terms of the plaintiffs' motion. Still, the government asked us to vacate the preliminary injunction and dismiss the appeal.

## II

The government filed its unopposed motion to dismiss under Federal Rule of Appellate Procedure 42(b)(2). This court grants such motions as a matter of course. But "dismissal is discretionary" under Rule 42(b). *Albers v. Eli Lilly & Co.*, 354 F.3d 644, 646 (7th Cir. 2004) (per curiam). "Doubtless there is a presumption in favor of dismissal, but the procedure is not automatic." *Id.* This court is especially hesitant to dismiss when "it would be irresponsible to dismiss the case without review." *Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 373 (7th Cir. 2015) (quoting *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246 (7th Cir.

---

[1] Two intervenors expressed concerns about the preclusive effects of such an order. Those were discussed at a hearing, at which the district court noted its own concerns about preclusion. Ultimately, the intervenors declined to lodge a formal objection.

**Add.8**

8                                                        No. 25-3023

2014)) (citation modified). And Rule 42 acknowledges the power to vacate before dismissing the appeal. FED. R. APP. P. 42(b)(3) ("A court order is required for any relief under Rule 42(b)(1) or (2) beyond the dismissal of an appeal—including … vacating an action of the district court").

In our view, the extraordinary circumstances of this case require us to review this order before dismissing the appeal. Vacatur is therefore appropriate for two independent reasons. This case appears to be moot, and the district court's order risks spawning serious legal consequences if it is not vacated. We address each point in turn.

### A

Congress has given federal appellate courts the power to vacate "any judgment, decree, or order of a court lawfully brought before it for review … as may be just under the circumstances." 28 U.S.C. § 2106. This "supervisory power over the judgments of the lower federal courts is a broad one." *Munsingwear*, 340 U.S. at 40.

The government asks us for a specific kind of vacatur, called "*Munsingwear* vacatur." When a case becomes moot on appeal due to happenstance or the unilateral actions of the winner below, *Munsingwear* vacatur is appropriate. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22–23 (1994). Courts have long "disposed of moot cases in the manner most consonant to justice … in view of the nature and character of the conditions which have caused the case to become moot." *Id.* at 24 (quoting *United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U.S. 466, 477–78 (1916)) (citation modified). This remedy ensures that "the rights of all parties are preserved" for possible future review, protecting losing

**Add.9**

parties from adverse judgments when the underlying controversy is no longer live. *Munsingwear*, 340 U.S. at 40. "The point of vacatur is to prevent an unreviewable decision from spawning any legal consequences, so that no party is harmed by … a 'preliminary' adjudication." *Camreta v. Greene*, 563 U.S. 692, 713 (2011) (citation modified).

Here, the plaintiffs originally moved to stay the appeal due to the change in circumstances on the ground. They had "not received a report of unconstitutional behavior" for nearly a month before moving to dismiss the case. And they told us that many DHS agents were "no longer operating in the Northern District of Illinois." Because the plaintiffs sought forward-looking injunctive relief, rather than damages for past harms, no case or controversy remained for the district court to resolve.

The Supreme Court also treats cases as moot when the plaintiff, who prevailed in the district court, asks that court to voluntarily dismiss the case. *See, e.g., Chapman v. Doe*, 143 S.Ct. 857, 857 (2023). All parties, then, have given us reason to vacate for mootness.

There are certain classes of cases in which *Munsingwear* vacatur should not be granted, such as when two parties settle while the case is on appeal. *Bancorp*, 513 U.S. at 23–24. And when the unilateral actions of the losing party make the case unreviewable, appellate courts also hesitate to grant *Munsingwear* vacatur. *See Karcher v. May*, 484 U.S. 72, 83 (1987).

Features of this case might call to mind these categories. For one, the plaintiffs consented to the government's request for *Munsingwear* vacatur, hinting at a settlement. The remedial powers of this court are not bargaining chips for parties to

**Add.10**

leverage in their arm's length negotiations. *Cf. In re Mem'l Hosp. of Iowa Cnty.*, 862 F.2d 1299, 1300 (7th Cir. 1988). For another, the government did not prevail in the district court, yet federal officers were withdrawn from Chicago. Though the absence of any further instances of allegedly unconstitutional behavior strongly suggests this case is moot, there may be some uncertainty on that point.

**B**

Vacatur is still the right remedy here, even if the case is not moot. The determination of whether to grant vacatur "is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course." *Bancorp*, 513 U.S. at 29. Vacatur, at heart, "is rooted in equity," so "the decision whether to vacate turns on the conditions and circumstances of the particular case." *Azar v. Garza*, 584 U.S. 726, 729 (2018) (per curiam) (citation modified). It is especially appropriate for appellate courts to exercise this power when supervising the district courts and ensuring that an order does not spawn unfair, adverse legal consequences. *Munsingwear*, 340 U.S. at 40–41 (citing 28 U.S.C. § 2106).

This case involved extraordinary circumstances. Working on a highly compressed timeline, the district court granted an overbroad, constitutionally suspect injunction. This decision was supported with hundreds of pages of factfinding, covering incidents from over a dozen locations around the Northern District of Illinois. That decision treated the claims of lead plaintiffs, class members, and non-class members as essentially interchangeable—both for Article III standing and for the merits. Yet when this court stayed the district court's order, the plaintiffs quickly and voluntarily withdrew their case. Vacatur is therefore proper to ensure the district court's

No. 25-3023                                                      11

injunction order does not affect future litigation, which would present its own facts and legal issues.

As noted in this court's stay order, the district court's injunction enjoins an expansive range of defendants, including the entire Departments of Homeland Security and Justice, as well as anyone acting in concert with them. The district court required these defendants to submit all current and future internal guidance, policies, and directives regarding efforts to implement the order for the court's review.

The court's injunction also impermissibly infringes on separation of powers principles. It effectively established the district court as the supervisor of all Executive Branch activity in the city of Chicago—a role another federal court of appeals has found problematic. *See Tincher v. Noem*, 164 F.4th 1097, 1100 (8th Cir. 2026). "[F]ederal courts do not exercise general oversight of the Executive Branch," so the district court likely abused its discretion by issuing such a sweeping injunction. *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). As we exercise our "broad" "supervisory power" over district courts, vacating this order signals district courts to avoid issuing similarly expansive injunctions against the Executive Branch. *Munsingwear*, 340 U.S. at 40.

The district court's order may also spawn adverse legal consequences. Because the district court dismissed this case without prejudice—against the plaintiffs' unopposed request for a dismissal with prejudice—any class members or the lead plaintiffs could refile these claims tomorrow. They could ask the district court to reinstate a near-identical preliminary injunction, adopting the facts and legal reasoning from the district court's order.

This is especially worrisome because the factual and legal foundations of the preliminary injunction are up for debate. Consider two examples out of many.

On the facts, the district court found the government's witnesses categorically not credible. This tilted all the testimonial evidence in the case in the plaintiffs' favor. The plaintiffs' decision to dismiss this case deprived appellate courts of the chance to decide whether that evidentiary ruling was an abuse of discretion.

On the law, the district court concluded that all the lead plaintiffs had Article III standing at a high level of generality. "Standing is not dispensed in gross," so a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), and *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) (citation modified); *see also Murthy v. Missouri*, 603 U.S. 43, 61 (2024). The same is true for the lead plaintiffs in a class action. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)). Moreover, plaintiffs suing for injunctive relief cannot establish standing by mere speculation. As the Supreme Court stated in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), "speculation is insufficient to establish the existence of a present, live controversy." *Id.* at 105 (citation modified).

The district court found as a matter of fact that "incidents have calmed down at Broadview" after state and local police took over security at the site. It also noted that October 3, 2025 was "the last day that federal agents used chemical munitions at the Broadview facility," and it recorded no further incidents involving defendants at that location. Yet it found

**Add.13**

No. 25-3023                                                    13

standing for the Broadview plaintiffs based on speculation, saying, "[N]o guarantee exists that state and local police will continue to patrol" at the facility. Because the plaintiffs allege no further harm to almost all of the Broadview plaintiffs after October 3, the district court's standing analysis appears to be in substantial tension with *Lyons*.

At the least, then, it would not be appropriate for a future case to incorporate the district court's findings of fact or legal conclusions without further, more detailed analysis. We can help avoid that pitfall by vacating the order that depends on these conclusions.

## C

A final equitable concern cuts in favor of vacating the district court's order. In ordinary cases under *Munsingwear*, appellate courts worry about a winning party taking advantage of the preclusive effects of a judgment. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71–72 (1997). The district court's handling of the motion to voluntarily dismiss risks partiality toward the plaintiffs.

Recall that the plaintiffs asked the district court for an order voluntarily dismissing the case with prejudice pursuant to Rules 23(e) and 41(a). That ruling would bind the whole class, which is why the district court held a hearing and had the parties notify the class, as Rule 23 requires. No class members or lead plaintiffs objected to dismissing this case with prejudice. Nor did anyone request an opt-out.

Yet the district court on its own accord chose to decertify the class, and then it dismissed the eighteen named plaintiffs' case without prejudice. The court provided no rationale for these deviations from the parties' requests, saying only that it

**Add.14**

14                                                      No. 25-3023

chose to decertify the class because "the preliminary injunction now is no longer in effect."

This decision presents several difficulties. First, the absence of reasoning does not conform to this circuit's rules. *See* Circuit Rule 50 ("Whenever a district court … terminates the litigation in its court … the judge shall give his or her reasons, either orally on the record or by written statement."). Second, the district court's power to "alter[] or amend[]" orders granting class certification, see FED. R. CIV. P. 23(c)(1)(C), applies only "if it appears that the suit cannot proceed consistent with Rule 23's requirements." *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 895 (7th Cir. 2024) (quoting *All. to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)). Because the district court gave no reason for decertifying the class, no appellate court could review whether it did so because Rule 23's requirements were no longer satisfied or for another reason.

It is especially important that district courts strictly adhere to Rule 23's requirements after *Trump v. CASA, Inc.* As the Supreme Court made clear, class actions are now the preferred vehicle for obtaining widespread relief, in lieu of disfavored universal injunctions. *CASA*, 606 U.S. at 849. One key reason for this preference is that Rule 23 offers "procedural protections" that universal injunctions do not. *Id.* The Court cautioned against these injunctions because they "circumvent Rule 23's procedural protections" and "allow courts to create *de facto* class actions at will." *Id.* (citation modified). Such "class-action workaround[s]" are inappropriate. *Id.* at 850.

This case represents the flip side of that coin. Even as Rule 23 protects non-parties, it creates consequences for those who take advantage of the class-action vehicle. Most parties who seek class certification understand those tradeoffs. When

**Add.15**

No. 25-3023                                                      15

district courts certify expansive classes and then decertify them at the first sign of trouble, they upset the balance struck by Rule 23. The class action vehicle would offer endless benefits to plaintiffs with no commensurate costs.

Of course, the order dismissing the case is not before us in this appeal. But the fact that this case has been dismissed without prejudice impacts the equities of granting vacatur. The practical upshot of the district court's decision is that the named plaintiffs and members of the class can refile in federal court tomorrow and try to reimplement the injunction anew. This procedural windfall for the plaintiffs thwarts Rule 23.

### III

All told, vacatur is the right remedy for this extraordinary case. The better course would have been for the district court to dismiss the underlying case with prejudice, but that did not occur. The next option is to vacate this otherwise "unreviewable decision," preventing it "from spawning any legal consequences, so that no party is harmed by" this "preliminary adjudication." *Camreta*, 563 U.S. at 713 (citation modified). Vacatur is the best way to wipe the slate clean.

For these reasons, we grant the government's motion. We VACATE the district court's order granting the preliminary injunction. And we DISMISS this appeal under Federal Rule of Appellate Procedure 42(b)(2).

**Add.16**

16                                                                No. 25-3023

EASTERBROOK, *Circuit Judge*, dissenting. Article III of the Constitution limits federal courts to cases and controversies. This litigation once met that description, but it does no longer. The plaintiffs have dismissed their complaint. None of the class's members sought to intervene to carry on the litigation. The defendants have moved to dismiss their appeal. No one wants to continue litigating.

If the parties had filed a stipulation of dismissal under Fed. R. App. P. 42(b)(1), we would have had no choice but to dismiss the appeal without ado. This rule says that "[t]he circuit clerk *must* dismiss a docketed appeal if the parties file a signed dismissal agreement specifying how costs are to be paid and pay any court fees that are due." (Emphasis added.) Because the motion to dismiss is a unilateral one under Rule 42(b)(2), however, dismissal is not compulsory—though, as I read Rule 42(b)(2), the court's only role is to resolve the terms of dismissal, such as the allocation of costs. The authority claimed by some panels of this court (and relied on by my colleagues) to keep an appeal alive for other purposes is hard to trace to the language of Rule 42, to the commentary issued by the Committee on Rules of Practice and Procedure, or to the fact that, when both sides desist, the court's job is done. As you can't have a suit without a plaintiff, you can't have an appeal without an appellant. By now this suit has neither a plaintiff nor an appellant.

I suppose one could say that we do have an appellant, because defendants seek an order vacating the judgment under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). Perhaps calling the motion one to dismiss the appeal is a misnomer. It seems best to me, however, to take the Department of Justice at its word: it wants us to dismiss the appeal (which is what it

**Add.17**

No. 25-3023                                                    17

promised plaintiffs to do). If we vacate the district court's or-der, we can't then dismiss the appeal; vacatur ends the appeal without dismissal. By contrast, if we dismiss the appeal as the motion proposes we cannot vacate or otherwise affect the dis-trict court's judgment. A losing party's decision not to pursue an appeal does not support or permit vacatur of a district court's order. *Karcher v. May*, 484 U.S. 72, 83 (1987) ("The con-troversy ended when the losing party … declined to pursue its appeal. Accordingly, the *Munsingwear* procedure is inap-plicable to this case.").

When one party confesses error on a district court's deci-sion but the other still seeks relief, judges are entitled to re-solve what remains of the conflict. See, e.g., *Young v. United States*, 315 U.S. 257, 258–59 (1942). But when *all* parties declare that they do not want judicial aid, the litigation should end forthwith.

My colleagues are troubled by some of the events in this litigation, and I share those concerns. But appellate judges' dissatisfaction with the district court's handling of a suit should not matter unless at least one of the parties is dissatis-fied—and none of the parties to this case now expresses dis-satisfaction. In recent years the Supreme Court has stressed the importance of adhering to the party-presentation princi-ple. See, e.g., *United States v. Sineneng-Smith*, 590 U.S. 371 (2020); *Clark v. Sweeney*, 607 U.S. 7 (2025). Today's decision goes well beyond what the parties are contesting (for they are no longer contesting anything). We should have left in place whatever the district judge left in place, see *Karcher* and *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), and committed to the future the resolution of any questions about what force, if any, the district judge's

**Add.18**

18                                                      No. 25-3023

opinions and orders have after all litigants abandon the field
of battle.

**Add.19**